UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ALTON TYRONE PETTWAY,**

    **Plaintiff,**

**v.**                                         **Case No: 8:23-cv-1785-MSS-AAS**

**AMAZON.COM SERVICES LLC,**

    **Defendant.**

_____

**ORDER**

    **THIS CAUSE** comes before this Court for consideration of Defendant Amazon.com Services LLC's Motion for Summary Judgment, (Dkt. 36), Defendant's Request for Oral Argument on the Motion for Summary Judgment, (Dkt. 40), Plaintiff Alton Tyrone Pettway's response in opposition to the Motion, (Dkt. 42), and Defendant's reply. (Dkt. 44) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS** Defendant's Motion for Summary Judgment. The Court **DENIES AS MOOT** Defendant's Request for Oral Argument.

    **I.**    **BACKGROUND**

    Plaintiff initiated this action against Defendant on August 21, 2023. (Dkt. 1) In the Second Amended Complaint (the "Complaint"), Plaintiff asserts claims of discriminatory termination, retaliatory termination, and retaliatory hostile work

environment under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*[1] (Dkt. 70)

In a Motion for Judgment on the Pleadings, Defendant argued Plaintiff released the claims he asserts in this proceeding in a settlement agreement between the Parties (the "Agreement"). (Dkt. 25 at 8) Defendant attached a copy of the Agreement to Defendant's Answer and Affirmative Defenses. (Dkt. 24-1; Dkt. 73-1) In response to Defendant's assertion that the Agreement precludes Plaintiff's claims, Plaintiff asserted several defenses to contract formation and argued that the Agreement should not be enforced. Plaintiff asserted the defense of unilateral mistake, maintaining that he was mistaken as to the meaning of the release. (Dkt. 27 at 10–12) Plaintiff also argued Defendant intentionally and/or negligently misrepresented a material fact to induce Plaintiff to agree to the release. (Id. at 12–13)

The Court denied Defendant's Motion for Judgment on the Pleadings, but it noted that "the plain language of the Agreement unambiguously releases and waives the claims Plaintiff asserts in this action." (Dkt. 29 at 5) The Court concluded that "[a]lthough the plain language of the Agreement would constitute a waiver of Plaintiff's Title VII claims, disputes of material fact remain as to several of Plaintiff's material factual allegations concerning his asserted defenses to contract formation: unilateral mistake, fraudulent inducement, and negligent misrepresentation." (Id. at 8)

---

[1] The Court permitted Plaintiff to file a Second Amended Complaint after the date on which Defendant filed the Motion for Summary Judgment to correctly identify Amazon.com Services LLC as the defendant in this case. (Dkt. 55) The Second Amended Complaint relates back to the date of the Amended Complaint. (Dkt. 23) See Fed. R. Civ. P. 15(c)(1)(C).

2

Now, Defendant moves for summary judgment on Plaintiff's asserted defenses to contract formation. (Dkt. 36) Defendant also moves for summary judgment on Plaintiff's claims of discrimination and retaliation. (Id.)

This case arises out of one of three administrative charges Plaintiff made against Defendant, his former employer, following his termination on February 24, 2023. (Dkt. 39-1 at 5, 23, 39) Plaintiff filed administrative complaints with the Occupational Health and Safety Administration ("OHSA"), the National Labor Relations Board (the "NLRB"), and the Equal Employment Opportunity Commission (the "EEOC"). (Dkt. 43-11 at ¶ 2; Dkt. 37 at ¶ 2) Plaintiff filed the EEOC charge on May 18, 2023. (Dkt. 70-1) The EEOC dismissed Plaintiff's charge and issued him a right-to-sue letter on May 24, 2023. (Dkt. 70-2) On August 21, 2023, Plaintiff, proceeding *pro se*, filed his Complaint in this case. (Dkt. 1) Therein, Plaintiff alleged Title VII as a basis for the Court's jurisdiction and alleged claims of discriminatory failure-to-hire, discriminatory termination, and retaliation against Defendant. (Id.)

A week later, on August 28, 2023, Plaintiff signed the Agreement, which contained a broad release of Plaintiff's claims against Defendant. The Agreement is unambiguous as to its scope. It states: "The Parties wish to enter into an agreement to prevent, settle, and resolve any disputes that may exist between them arising out of their employment relationship and its termination, with the exception of the NLRB Charge, and they enter into this Agreement for that purpose." (Dkt. 24-1 at 1) The Agreement further states, "Employee understands that this Agreement . . . is conditioned upon . . . dismissal and closure of any other charges with any other

3

government agencies, other than the NLRB Charge, that Employee has already filed or caused to be filed." (Id. at 2) In a provision entitled "General Release," the Agreement states,

> Employee expressly waives any and all claims against Amazon, to the maximum extent permitted by law, releases Amazon (including its parent corporation and any affiliated corporations, its owners, officers, directors, stockholders, managers, agents, employees, and representatives) (collectively, the "Releasees") from any and all actual or potential actions, claims, causes of action, and damages, known or unknown which Employee ever had, now has or hereafter may have as a result of any matters arising or occurring prior to the execution of this Agreement, other than the NLRB Charge. It is understood that this release includes, but is not limited to, any claims for . . . damages of any kind whatsoever, arising out of . . . any theory of wrongful discharge, . . . any theory of retaliation, any theory of discrimination or harassment in any form, . . . or any federal[,] state, or other government statute or ordinance, including without limitation, Title VII of the Civil Rights Act of 1964, . . . as amended . . . .

(Id. at 3–4)

Nonetheless, Plaintiff disputes that the Agreement precludes him from pursuing his Title VII claims against Defendant. Plaintiff maintains that he relied on a representation made to him by Stephanie LaFayette, an OHSA Regional Investigator, prior to Plaintiff's execution of the Agreement.

Plaintiff filed his OHSA complaint in March 2023. (Dkt. 43-11 at ¶ 2; Dkt. 37 at ¶ 2) In April 2023, LaFayette was assigned to investigate Plaintiff's OHSA charge. (Dkt. 43-11 at ¶ 2) During Lafayette's investigation, Lafayette communicated with Plaintiff and Defendant. (Id.) LaFayette acted as an intermediary between the Parties,

4

who began to discuss settling Plaintiff's OHSA charge. (Id. at ¶ 3; Dkt. 37 at ¶ 3) Defendant's counsel and Plaintiff never communicated directly with each other about the scope or content of any settlement proposals. (Id. at ¶ 7; Dkt. 43-11 at ¶ 3) Defendant's counsel never copied Plaintiff on any of Defendant's communications with LaFayette.

On August 22, 2023, Defendant's counsel sent LaFayette two draft settlement documents. (Dkt. 37 at ¶ 5) The first document reflected a settlement of the OHSA charge (the "OHSA Agreement"), which Defendant's counsel understood OHSA required to close the administrative charge. (Id.) The second document sought a global settlement and release of all claims, known and unknown, except those arising out of the NLRB Charge. (Id.)

LaFayette responded that she had recently learned Plaintiff had filed an administrative charge against Defendant with the EEOC. (Id. at ¶ 6) LaFayette told Defendant's counsel that Plaintiff wished to pursue the EEOC charge. (Dkt. 37-2 at 2) She wrote in an email, "He still wants to settle the OHSA complaint . . . but not if it means he has to dismiss either of the other two charges[,]" meaning the NLRB and EEOC charges. (Id.) LaFayette suggested the Parties carve out the EEOC charge from the release in the same way as the Parties carved out the NLRB charge. (Dkt 37 at ¶ 6)

At the time of this correspondence between Defendant's counsel and LaFayette, the EEOC Tampa Field Office had already closed Plaintiff's EEOC charge and had issued Plaintiff a right-to-sue letter on May 24, 2023. (Id. at ¶ 7) Moreover, Plaintiff

5

had already filed this lawsuit, in which he alleged discrimination under Title VII. (Dkt. 1)

On August 24, 2023, Defendant's counsel told LaFayette,

> It turns out [Plaintiff's] EEOC charge is already resolved. Our records show that the Tampa Field Office issued [Plaintiff] a Determination and Notice of Rights for Charge No. 511-2023-01580, stating that the EEOC was not proceeding further and instead was issuing [Plaintiff] a right to sue. Given that, [Defendant] does not want to further revise the agreement, which should be unobjectionable at this point given that the EEOC charge is not an issue and that it carves out the NLRB charge for [Plaintiff] to continue pursuing.
>
> Could you remind [Plaintiff] that the EEOC has concluded its investigation, issued a right to sue letter to him, and closed its file?

(Dkt. 37-2 at 2)

Later that day, LaFayette, in an apparent misunderstanding of the interplay between an EEOC complaint and Plaintiff's pending Title VII action, sent an email to Plaintiff that stated:

> I just received the following from the [Defendant] attorney, which is great news. With what you did at the courthouse with [the] EEOC, you are able to proceed as is. A right to sue is different than an EEOC investigation that is actively ongoing, so you can sign [the Agreement] now without issue!
>
> [Quoting Defendant's email]
> "It turns out [Plaintiff's] EEOC charge is already resolved. Our records show that the Tampa Field Office issued [Plaintiff] a Determination and Notice of Rights for Charge No. 511-2023-01580, stating that the EEOC was not proceeding further and instead was issuing [Plaintiff] a right to sue. Given that, [Defendant] does not want to further

> revise the agreement, which should be unobjectionable at this point given that the EEOC charge is not an issue and that it carves out the NLRB charge for [Plaintiff] to continue pursuing."

(Dkt. 43-10 at 3–4)

Plaintiff subsequently executed the Agreement and the OHSA Agreement, and on August 28, 2023, LaFayette forwarded Defendant's counsel executed copies of the agreements. (Dkt. 37 at ¶ 7)

## II.   LEGAL STANDARDS

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1356 (11th Cir. 2007)). Which facts are material depends on the substantive law applicable to the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

Evidence is reviewed in the light most favorable to the non-moving party. Fennell, 559 F.3d at 1216 (citing Welding Servs., Inc., 509 F.3d at 1356). A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case. Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

When a moving party has discharged its burden, the non-moving party must then designate specific facts (by its own affidavits, depositions, answers to interrogatories, or admissions on file) that demonstrate there is a genuine issue for trial. Porter v. Ray, 461 F.3d 1315, 1320–1321 (11th Cir. 2006) (citation omitted). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

## III.   DISCUSSION

Defendant is entitled to summary judgment on Plaintiff's Title VII claims because Plaintiff released the claims in exchange for consideration under the Agreement. Plaintiff's defenses to contract formation fail as a matter of law.

### a. Admissibility of Parol Evidence

First, the Court notes that "the parol evidence rule does not exclude oral or extrinsic evidence of fraud, accident, or mistake." Farrey's Wholesale Hardware Co., Inc. v. Colton Elec. Servs., LLC, 263 So. 3d 168, 177 (Fla. 2d DCA 2018); Cent. Mut. Ins. Co. v. Cropper, 296 So. 2d 69, 71 (Fla. 2d DCA 1974) ("Parol evidence is always admissible to show fraud or misrepresentation in the inducement of a contract."); Ali R. Ghahramani, M.D., P.A. v. Pablo A. Guzman, M.D., P.A., 768 So. 2d 535, 537

8

(Fla. 4th DCA 2000) (noting that "when a party to an unambiguous agreement has a dispute regarding the agreement's scope, an exception to the parol evidence rule applies, and such evidence may be admissible to determine the true intent of the parties"). Thus, evidence of communications between Defendant and LaFayette and communications between LaFayette and Plaintiff are admissible to assess Plaintiff's defenses to contract formation.

### b. Fraudulent Inducement & Negligent Misrepresentation

Plaintiff fails to establish the elements of either a fraudulent inducement or negligent misrepresentation defense to the enforcement of the Agreement. To prove both fraudulent inducement and negligent misrepresentation, a plaintiff must show the *defendant* made a misrepresentation of material fact and that the plaintiff suffered injury due to the plaintiff's justifiable reliance on the representation. Samuels v. King Motor Co. of Fort Lauderdale, 782 So. 2d 489, 497 (Fla. 4th DCA 2001); Yost v. Rieve Enters., Inc., 461 So. 2d 178, 182 (Fla. 1st DCA 1984); Specialty Marine & Indus. Supplies, Inc. v. Venus, 66 So. 3d 306, 309 (Fla. 1st DCA 2011) (quoting Simon v. Celebration Co., 883 So. 2d 826, 832 (Fla. 5th DCA 2004)).

The record lacks any evidence that Defendant or Defendant's counsel made any representation to Plaintiff other than those contained in the Agreement itself. This fact ends the inquiry. Without proof of any representation, there can be no claim for negligent *mis*representation or fraudulent inducement.

But even if the Court were to consider Defendant's representations to Lafayette, the Court finds that Defendant's attorney's statement to LaFayette that "the EEOC

9

charge is not an issue" because the EEOC has already resolved the EEOC complaint and issued a right-to-sue letter was completely truthful. The Agreement expressly referenced any open EEOC charges, stating: "Employee understands that this Agreement . . . is conditioned upon . . . dismissal and closure of any other charges with any other government agencies, other than the NLRB Charge, that Employee has already filed or caused to be filed." (Dkt. 73-1 at 2) Since the EEOC had dismissed Plaintiff's charge, Defendant's attorney correctly stated that the previously pending EEOC charge should not be an issue.

The record evidence establishes that LaFayette may have made a negligent misrepresentation. She apparently understood Defendant's counsel's statement that "the EEOC charge is not an issue" to mean that Plaintiff could pursue his Title VII claims even though the terms of the Agreement expressly waived them. Nonetheless, Defendant is not responsible for LaFayette's misrepresentation to Plaintiff because Defendant did not make a misrepresentation to Plaintiff or to LaFayette, and Plaintiff offers no evidence that Lafayette was Defendant's agent. Consequently, Plaintiff fails to prove this necessary element of his fraudulent inducence and negligent misrepresentation defenses.

Additionally, even if Lafayette's representation to Plaintiff were relevant, Plaintiff fails to demonstrate that he justifiably relied on LaFayette's representation. First, "[a] party cannot recover for alleged false misrepresentations that are adequately dealt with or expressly contradicted in a later written contract." TRG Night Hawk Ltd. V. Registry Dev. Corp., 17 So. 3d 782, 784 (Fla. 2d DCA 2009) (citations omitted).

10

"To hold otherwise is to invite contracting parties to make agreements . . . and then avoid them by simply taking the stand and swearing that they relied on some other statement." Tevini v. Roscioli Yacht Sales, Inc., 597 So. 2d 913, 914 (Fla. 4th DCA 1992). Here, the Agreement expressly and unambiguously waived Plaintiff's Title VII claims. Under Florida law, Plaintiff cannot claim that he justifiably relied on LaFayette's negligent statement as to the scope of the Agreement's release where the plain terms of the contract contradicted the representation.

Second, Plaintiff's own conduct indicates he understood the interplay between the EEOC charge and the Title VII claims, even if LaFayette did not. Acting *pro se*, Plaintiff exhausted administrative remedies with the EEOC before initiating this action, in which he cited Title VII as the basis for his entitlement to relief. The record evidence demonstrates that Plaintiff understood the claims arising out of his EEOC charge were claims under Title VII. The Court cannot find that he justifiably relied on LaFayette's representation when the terms of the Agreement unambiguously waived the Title VII claims he asserted in his *pro se* Complaint.

Plaintiff fails to establish essential elements of the fraudulent inducement and negligent misrepresentation defenses to the enforcement of the Agreement.

### c. Unilateral Mistake

Plaintiff cannot rely on the doctrine of unilateral mistake to rescind the Agreement. Florida recognizes the unilateral mistake doctrine. Roberts & Schaefer Co. v. Hardaway Co., 152 F.3d 1283, 1291 (11th Cir. 1998) (quoting Langbein v. Comerford, 215 So. 2d 630, 631 (Fla. 4th DCA 1968)). However, where the asserted

11

mistake is about the meaning of an unambiguous agreement, rescission is warranted only where the mistake is mutual. Ali R. Ghahramani, M.D., P.A., 768 So. 2d at 537–38 (citing Soucy v. Casper, 658 So. 2d 1015, 1015 (Fla. 4th DCA 1995)) ("[T]o set aside an unambiguous agreement it is insufficient to simply allege and prove a unilateral mistake."). "[I]f a party to a release can establish mutual mistake, that party may be relieved from the unintended language." Soucy, 658 So. 2d at 1015. But a unilateral mistake about the scope of a clear and unambiguous release will not warrant rescission. See id.; Ali R. Ghahramani, M.D., P.A., 768 So. 2d at 537–38; cf. Allen v. Reliaquest, LLC, No. 23-cv-0806, 2025 WL 1266740, at *5 (M.D. Fla. May 1, 2025).

Here, Plaintiff asserts that LaFayette's communications caused him to mistakenly believe the Agreement did not release his Title VII claims. However, the Agreement unambiguously waives claims under Title VII. The evidence in the record conclusively establishes that Defendant was not mistaken as to the scope of the Agreement's release. Thus, even if Plaintiff's claimed unilateral mistake about the scope of the Agreement could be proven, it does not warrant rescission of the Agreement under Florida law because the mistake was not mutual.

## IV.   CONCLUSION

Accordingly, it is hereby **ORDERED**:

1. Defendant Amazon.com Services LLC's Motion for Summary Judgment, (Dkt. 36), is **GRANTED**.

2. Defendant's Request for Oral Argument on the Motion for Summary Judgment, (Dkt. 40), is **DENIED AS MOOT**.

3. The Clerk is **DIRECTED** to enter judgment for Defendant, to **TERMINATE** any pending motions and **CLOSE THIS CASE**.

**DONE** and **ORDERED** in Tampa, Florida, this 19th day of August 2025.

**Copies furnished to:**
Counsel of Record
Any *pro se* party

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE